UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
STERLING COMMERCIAL                 )
CREDIT — MICHIGAN, LLC,             )
                                    )
    Plaintiff,                      )
                                    )
    v.                              )   Civil Action No. 10-2332 (PLF)
                                    )
PHOENIX INDUSTRIES I, LLC d/b/a     )
PHOENIX INDUSTRIES, LLC, et al.,    )
                                    )
    Defendants.                     )
_____ )

OPINION

This matter is before the Court on plaintiff's motion for a temporary restraining order and preliminary injunction "with notice." Plaintiff's title notwithstanding, it is far from clear whether any of the defendants have in fact received notice of this motion. Accordingly, although no opposition has been filed, the Court does not treat plaintiff's motion as unopposed. Upon consideration of plaintiff's arguments, the relevant legal authorities, and the entire record in this case, the Court will deny plaintiff's motion.[1]

---

[1] The papers reviewed in connection with the pending motion include the following: plaintiff's complaint ("Compl."); the Factoring and Security Agreement (attached as Exhibit 1 to Compl.) ("Agreement"); the Letter from Dannette Wright to Michigan Commercial Credit, LLC, Nov. 8, 2010 (attached as Exhibit 2 to Compl.) ("Letter from Ms. Wright to MCC"); the Guaranty (attached as Exhibit 3 to Compl.) ("Guaranty"); the Bill of Sale (attached as Exhibit 4 to Compl.) ("Bill of Sale"); plaintiff's emergency motion for a temporary restraining order and preliminary injunction, with notice ("Mot."); the Affidavit of William Edwin Small in support of plaintiff's Mot. ("Small Aff."); Exhibits 1 through 4 to Small Aff. (the same four Exhibits as those attached to plaintiff's Compl., but in a different order); and plaintiff's Rule 65.1 certificate ("Rule 65.1 Certificate").

I.  BACKGROUND

Plaintiff Sterling Commercial Credit — Michigan, LLC, "specializes in providing businesses with asset-based lending solutions by purchasing credit-worthy accounts receivable." Small Aff. ¶ 3. In other words, plaintiff is in the business of "factoring." See id. In this commercial practice, a "factor" or factoring company — here, plaintiff — enters into a factoring agreement with a business, whereby the factor "buys accounts receivable [from a business] at a discount, the [business] obtains immediate operating cash, and the factor profits when the face value of the account is collected." 32 AM. JUR. 2D FACTORS AND COMMISSION MERCHANTS § 2 (2010); see, e.g., Staff, IT, Inc. v. United States, 482 F.3d 792, 794 (5th Cir. 2007). This case arises from alleged breaches of a factoring agreement executed in 2008 and purportedly assigned to plaintiff in 2010.

Defendant Phoenix Industries I, LLC ("Phoenix") "provides building maintenance and facility support services." Compl. ¶ 13. On March 13, 2008, Phoenix entered into a factoring agreement — the Agreement at issue here — with Michigan Commercial Credit, LLC ("MCC"), another factoring company. See Agreement at 1; Small Aff. ¶ 4. In brief, the Agreement provides that Phoenix will sell its accounts receivable to MCC and that Phoenix will grant to MCC a security interest in other assets belonging to Phoenix. See Agreement §§ 2.1, 8; Small Aff. ¶ 4. Phoenix's president, defendant Dannette Wright, later entered into a Guaranty with MCC, whereby Ms. Wright, in her individual capacity, guaranteed "all [of Phoenix's] present and future obligations" to MCC. See Guaranty §§ 1.7, 2.1; Small Aff. ¶¶ 20-22.

On November 20, 2008, MCC purportedly assigned all of its rights in this Agreement and any guaranty agreement to Midstates Capital LLC ("Midstates"). See Small Aff.

2

¶ 6. Subsequently, on August 24, 2010, Midstates purportedly assigned all of its rights in the Agreement and any guaranty agreement to plaintiff. See id. ¶ 7. Thus, plaintiff asserts that, as of August 24, 2010, "all contractual provisions at issue in this matter pertain to [plaintiff]." Id.

Pursuant to the Agreement, plaintiff alleges that Phoenix is currently indebted to plaintiff in the amount of $908,009.64. Small Aff. ¶ 26. Plaintiff, however, "has received no payments toward satisfaction of" this debt, and plaintiff contends that Phoenix and Ms. Wright have failed to perform their duties under the Agreement and the Guaranty, respectively. See id. ¶¶ 30, 35, 38. Specifically, plaintiff alleges that Phoenix has violated the Agreement by "wrongfully diverting accounts from which [plaintiff] is to receive payments." Id. ¶ 24; see Mot. at 3. And Ms. Wright has allegedly violated the Guaranty by failing to make any payments toward satisfaction of Phoenix's outstanding debt. Mot. at 4; see Small Aff. ¶¶ 20-22, 27-30.

Plaintiff alleges that Phoenix further violated the Agreement when, on October 30, 2010, Phoenix unilaterally, and without plaintiff's consent, executed a Bill of Sale with defendant United Concepts International LLC ("United") and its president, defendant Melvin Woodard. See Mot. at 5; Small. Aff. ¶¶ 13-19. Pursuant to the Bill of Sale, Phoenix sold its accounts receivable and assets to United for $1.5 million. See Bill of Sale at 1. All of the cash proceeds from this sale were to be paid by United to Phoenix on January 1, 2011. Bill of Sale at 1; see Small Aff. ¶ 32. Plaintiff contends that this sale violated the express terms of the Agreement and again diverted accounts that were payable exclusively to plaintiff. See Small Aff. ¶¶ 13, 16. Plaintiff further contends that "all or part of the cash proceeds due under the Bill of Sale may have been paid into an escrow account of an unknown third party and may be disbursed to other third parties, including a relative of [Ms.] Wright." Id. ¶ 33.

3

Accordingly, on December 30, 2010, plaintiff filed a complaint against Phoenix, Ms. Wright, United, and Mr. Woodward. See generally Compl. Plaintiff sets forth six separate claims in its complaint: (1) breach of contract against Phoenix; (2) breach of contract against Ms. Wright; (3) common law conversion against all defendants; (4) statutory conversion against Phoenix, United, and Ms. Wright; (5) temporary restraining order against all defendants; and (6) preliminary injunction against all defendants. See generally id. On January 6, 2011, plaintiff filed the pending motion for a temporary restraining order and preliminary injunction. See generally Mot. Plaintiff requests, among other things, that the Court enjoin defendants from collecting any further payments purportedly subject to the Agreement; enjoin defendants from disposing of the cash proceeds and any other assets associated with the sale of Phoenix to United; and order that all of the disputed money and assets be paid into the Court pending the final disposition of this case on its merits. See id. at 10-11.

## II. LEGAL STANDARD

A preliminary injunction is "'an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion.'" Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004)). To warrant preliminary injunctive relief, a moving party must show: (1) that there is a substantial likelihood that it will succeed on the merits of its claims; (2) that it will suffer irreparable harm in the absence of an injunction; (3) that an injunction would not substantially harm the defendant or other interested parties (balance of harms); and (4) that the public interest would be furthered, or at least not adversely

affected, by the injunction. See id.; Davis v. Pension Benefit Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009); Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998). "The same standard applies to both temporary restraining orders and to preliminary injunctions." Hall v. Johnson, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009).

These four factors must be viewed as a continuum, with more of one factor compensating for less of another. Davis v. Pension Benefit Guar. Corp., 571 F.3d at 1291-92. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995). An injunction may be justified "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." Id. Conversely, when the other three factors strongly favor interim relief, a court may grant injunctive relief when the moving party has merely made out a "substantial" case on the merits. The necessary level or degree of likelihood of success that must be shown will vary according to the Court's assessment of the other factors. Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843-45 (D.C. Cir. 1977). An injunction may be issued "with either a high probability of success and some injury, or *vice versa*." Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985).

Despite this flexibility, however, "a movant must demonstrate 'at least some injury' for a preliminary injunction to issue," and "[a] . . . failure to show *any* irreparable harm" constitutes grounds for denying the motion for a preliminary injunction, "even if the other three

5

factors entering the calculus merit such relief." Chaplaincy of Full Gospel Churches v. England, 454 F.3d at 297 (quoting CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d at 747, and citing Sea Containers Ltd. v. Stena AB, 890 F.2d 1205, 1210-11 (D.C. Cir. 1989)) (emphasis added).

### III. DISCUSSION

*A. Notice to Defendants*

Although the same substantive standard generally applies to both temporary restraining orders and preliminary injunctions, see Hall v. Johnson, 599 F. Supp. 2d at 3 n.2, there is an important procedural distinction between the two: a temporary restraining order may in some defined circumstances be issued without notice, whereas a preliminary injunction may not. Compare FED. R. CIV. P. 65(b)(1) ("The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney . . . ."), with FED. R. CIV. P. 65(a)(1) ("The court may issue a preliminary injunction *only on notice* to the adverse party.") (emphasis added); see also Laster v. District of Columbia, 439 F. Supp. 2d 93, 99-100 (D.D.C. 2006) ("Because a preliminary injunction may be unlimited in duration, notice to adverse parties is required."). The Local Civil Rules of this Court are more stringent, requiring "proof satisfactory to the court" of actual notice or efforts made to give such notice; an *ex parte* application for a temporary restraining order will be considered only "in an emergency." See LOC. CIV. R. 65.1(a).

Plaintiff titles its motion as one "with notice." Mot. at 1. Moreover, plaintiff clearly states that it "gave Defendants notice prior to filing the subject Motion." Id. at 1 n.1.

Plaintiff's Rule 65.1 Certificate, however, paints a different picture. At best, plaintiff provided notice by e-mail to Phoenix and by voicemail to United but even that is unclear. The Court describes below plaintiff's notification efforts with respect to each defendant, as stated in plaintiff's Rule 65.1 Certificate:

    *1. Phoenix* — On January 5, 2011, plaintiff e-mailed its motion papers to Phoenix. Rule 65.1 Certificate at 1. Plaintiff explains that the e-mail was "successful," though it is unclear to the Court what that actually means.

    *2. Ms. Wright* — On January 5, 2011, plaintiff e-mailed its motion papers to Ms. Wright. Rule 65.1 Certificate at 1. The e-mail, however, "was rejected." Id. Thus, that same day, plaintiff attempted to deliver its papers by courier to Ms. Wright at what was believed to be her home address, as listed on the Guaranty, but this attempt at notice also failed: "The address listed on the Guaranty did not designate a specific apartment number and the property manager would not provide [Ms.] Wright's apartment number or confirm whether she resides there." Id. at 1-2.

    *3. United* — On January 5, 2011, plaintiff sent its motion papers via courier to what was believed to be United's business address but "was informed by a security guard that no business by [United's] name . . . has an office at that address." Rule 65.1 Certificate at 2. That same day and the following day, January 6, 2011, plaintiff's counsel attempted to call what was believed to be United's business number but no one answered. See id. at 2. Plaintiff's counsel therefore left a message identifying plaintiff's counsel and contact information. Id. Plaintiff did not receive a response. Id.

*4. Mr. Woodard* — On January 6, 2011, plaintiff's counsel attempted to call Mr. Woodard on what was believed to be his cell phone but no one answered. See Rule 65.1 Certificate at 2. Because no voicemail was set up, plaintiff could not leave a message. Id.

As the court of appeals has explained, "[t]he purpose of Rule 65(a)(1)'s notice requirement is to allow the opposing party a fair opportunity to oppose the preliminary injunction . . . , and *compliance is mandatory* . . . ." United States v. Microsoft Corp., 147 F.3d 935, 944 (D.C. Cir. 1998) (internal quotations and citations omitted) (emphasis added); see also Beierle v. Zavares, Nos. 99-1383, 99-1530, 2000 WL 757725, at *6 (10th Cir. June 12, 2000) ("Compliance with this notice requirement [pursuant to Rule 65(a)(1)] is mandatory, and the rule has constitutional as well as procedural dimensions."). This notice requirement "reflect[s] the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, 415 U.S. 423, 438-39 (1974). Thus, "[p]reliminary injunctions entered without notice to the opposing party are generally dissolved." United States v. Microsoft Corp., 147 F.3d at 944.

Upon review of plaintiff's Rule 65.1 Certificate, the Court cannot be certain that any of the defendants have in fact been provided with notice of the pending motion. On the contrary, what is clear to the Court is that neither Ms. Wright nor Mr. Woodard has been provided with such notice. Although plaintiff concludes that it "has taken all reasonable steps to notify all Defendants," see Rule 65.1 Certificate at 2, the Court disagrees. The Court finds plaintiff's efforts — taken over the span of only two days and, in the case of Mr. Woodard, amounting to one unanswered phone call — rather minimal.

The Court's conclusion on the matter of notice is, by itself, sufficient to deny plaintiff's request for a preliminary injunction, FED. R. CIV. P. 65(a)(1), as well as — under the Local Rules — to deny plaintiff's request for a temporary restraining order. See LOC. CIV. R. 65.1(a). Nevertheless, the Court will turn to the merits of plaintiff's motion.

*B. Irreparable Harm*

The court of appeals "has set a high standard for irreparable injury." Chaplaincy of Full Gospel Churches v. England, 454 F.3d at 297. This factor thus "erects a very high bar for a movant." Coalition for Common Sense in Gov't Procurement v. United States, 576 F. Supp. 2d 162, 168 (D.D.C. 2008). To make the required showing of irreparable harm, a moving party must establish that its injury satisfies a two-part test. See Chaplaincy of Full Gospel Churches v. England, 454 F.3d at 297.

"First, the injury 'must be both certain and great; it must be actual and not theoretical.'" Chaplaincy of Full Gospel Churches v. England, 454 F.3d at 297 (quoting Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985)). Thus, "[t]he moving party must show '[t]he injury complained of is of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm.'" Id. (quoting Wisconsin Gas Co. v. FERC, 758 F.2d at 674) (emphasis in original); see Coalition for Common Sense in Gov't Procurement v. United States, 576 F. Supp. 2d at 168 ("[T]he alleged injury must be certain, great, actual, and imminent."). "Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur." Wisconsin Gas Co. v. FERC, 758 F.2d at 674 (emphasis in original); see TD Int'l, LLC v. Fleischmann & Tertium Datur Int'l, LLC, 639 F.

9

Supp. 2d 46, 48 (D.D.C. 2009) ("Injunctive relief 'will not be granted against something merely feared as liable to occur at some indefinite time.'") (quoting Wisconsin Gas Co. v. FERC, 758 F.2d at 674)). Instead, "[t]he movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." Wisconsin Gas Co. v. FERC, 758 F.2d at 674. Moreover, "the movant must show that the alleged harm will directly result from the action which the movant seeks to enjoin." Id.

"Second, the injury must be beyond remediation." Chaplaincy of Full Gospel Churches v. England, 454 F.3d at 297. Thus, "'[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.'" Id. at 297-98 (quoting Wisconsin Gas Co. v. FERC, 758 F.2d at 674). The Court finds that plaintiff has failed to demonstrate that, in the absence of injunctive relief, it will suffer irreparable harm for which there is no adequate remedy at law.

1. Plaintiff's Economic Harm Argument

Plaintiff contends:

> Defendant Phoenix is currently indebted to [plaintiff] in the amount of $908,009.64 . . . . All Defendants have converted assets owned by [plaintiff] and monies owed to it, and the Sales Proceeds have and/or may be distributed to third parties other than [plaintiff]. Once the cash proceeds are gone, that source of money will be extinguished and [plaintiff's] rights will be hindered further.

Mot. at 6. In sum, plaintiff alleges economic harm in the amount of $908,009.64. But the "general rule [is] that economic harm does not constitute irreparable injury." Davis v. Pension

Benefit Guar. Corp., 571 F.3d at 1295; see Wisconsin Gas Co. v. FERC, 758 F.2d at 674 ("It is . . . well settled that economic loss does not, in and of itself, constitute irreparable harm."). As the court of appeals has stated:

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.

Chaplaincy of Full Gospel Churches v. England, 454 F.3d at 297-98 (quoting Wisconsin Gas Co. v. FERC, 758 F.2d at 674) (emphasis in original). Although there appear to be two exceptions to this general rule, plaintiff has failed to establish that either applies.

First, economic harm may qualify as irreparable where a plaintiff establishes that the harm "is so severe as to cause extreme hardship to the business or threaten its very existence." Coalition for Common Sense in Gov't Procurement v. United States, 576 F. Supp. 2d at 168 (internal quotations omitted); see Toxco Inc. v. Chu, 724 F. Supp. 2d 16, 31 (D.D.C. 2010); TD Int'l, LLC v. Fleischmann & Tertium Datur Int'l, LLC, 639 F. Supp. 2d at 48. The critical consideration under this exception is the effect that the purported economic harm will have on a movant's business or its very existence — not any monetary amount *per se*. Plaintiff plainly does not allege that it will sustain a harm of this nature. Indeed, plaintiff provides no information whatsoever as to what effect, if any, this purported economic harm will have on its business. See TD Int'l, LLC v. Fleischmann & Tertium Datur Int'l, LLC, 639 F. Supp. 2d at 48-49, 49 n.3 (holding that plaintiff failed to establish irreparable harm because, even assuming plaintiff's alleged economic loss of over one million dollars in damages were true, "[t]his alleged

11

loss . . . [was] never placed in the context of the financial condition of [plaintiff's] business"); see also Isong v. Apex Petroleum Corp., 273 F. Supp. 2d 1, 2 (D.D.C. 2002) ("The only harm plaintiff alleges he will suffer is the loss of $95,000, which he can recover when and if he establishes that there was a valid contract . . . between the parties and it was breached by the defendant.").

Second, courts have also held, under some circumstances, that economic harm may qualify as irreparable "where a plaintiff's alleged damages are unrecoverable." Clarke v. Office of Fed. Hous. Enter., 355 F. Supp. 2d 56, 65 (D.D.C. 2004); see Bracco Diagnostics, Inc. v. Shalala, 963 F. Supp. 20, 29 (D.D.C. 1997) ("While the injury to plaintiffs is admittedly economic, there is no adequate compensatory or other corrective relief that can be provided at a later date, tipping the balance in favor of injunctive relief.") (internal quotations and citation omitted). Even unrecoverable losses, however, must have a "serious" effect on a plaintiff in order to be considered irreparable for purposes of a preliminary injunction. See Toxco Inc. v. Chu, 724 F. Supp. 2d at 31; Mylan Pharms., Inc. v. Shalala, 81 F. Supp. 2d 30, 42 (D.D.C. 2000) ("Because [plaintiff] is alleging a non-recoverable monetary loss, it must demonstrate that the injury [is] more than simply irretrievable; it must also be serious in terms of its effect on the plaintiff.") (internal quotations and citation omitted). Compare LG Elecs., USA, Inc. v. Dep't of Energy, 679 F. Supp. 2d 18, 35-36 (D.D.C. 2010) ("Even assuming [the plaintiff] will not be able to recover monetary damages from [defendant] . . . the financial impact [plaintiff] claims it will suffer does not rise to the level of irreparable harm" because that impact represents only "a minuscule portion of the company's worldwide revenues . . . ."); Sandoz, Inc. v. FDA, 439 F. Supp. 2d 26, 32 (D.D.C. 2006) ("A loss of less than 1 percent total sales" — in that case,

12

amounting to nearly $31 million — "is not irreparable harm . . . nor would it threaten the company's very existence.") (internal quotations and citation omitted).

> Perhaps in an attempt to invoke this exception, plaintiff states:
>
> If Phoenix, Wright, United and Woodard are not ordered to refrain from releasing the funds at issue to any party other than [plaintiff], and from continuing to divert funds owed to [plaintiff] from its accounts under the . . . Agreement, [plaintiff] will be irreparably harmed because, among other things, Phoenix has sold all of its assets and will likely not remain in business and the funds *may be disbursed outside of the District of Columbia* and *may become unable to be recovered*.

Small Aff. ¶ 38 (emphasis added). Plaintiff's "[b]are allegations of what is likely to occur," couched as they are here in mere possibilities, however, "are of no value since the court must decide whether the harm will *in fact* occur." Wisconsin Gas Co. v. FERC, 758 F.2d at 674 (emphasis in original). Moreover, plaintiff has not demonstrated that the harm would be serious in terms of its effect on the plaintiff's business or its existence. See Toxco Inc v. Chu, 724 F. Supp. 2d at 31; Mylan Pharms., Inc. v. Shalala, 81 F. Supp. 2d at 42. As discussed, plaintiff has provided no information as to what effect the purported economic harm will have on its business. Thus, plaintiff has provided no reason for this Court to depart from the established rule "that economic harm does not constitute irreparable injury." See Davis v. Pension Benefit Guar. Corp., 571 F.3d at 1295.

2. Plaintiff's Multiplicity of Suits Argument

Plaintiff presents a second irreparable harm argument. Plaintiff contends that it will suffer irreparable harm because it may be forced to pursue a "multiplicity of suits" to recover damages. See Mot. at 7. Plaintiff states: "The effect of Defendants' continued wrongful

diversion of accounts and proceeds that belong to [plaintiff] under the . . . Agreement is subjecting all account debtors from which payments are made to become subject to further lawsuits . . . ." Id. Relying on the Delaware Uniform Commercial Code, plaintiff asserts that "in each and every instance that one or more of the Defendants' actions cause account debtor payments to be misappropriated and misdirected to their dominion, control and use; each account debtor becomes exposed to litigation . . . ." Id. (citing DEL. CODE ANN. tit. 6, § 9-406(a)).[2] Thus, plaintiff concludes, because "[t]he law provides that a party may seek equitable relief if a multiplicity of suits will otherwise result," injunctive relief is warranted here. Id. (citing Oppenheimer v. Philadelphia, Baltimore, & Washington R.R. Co., 39 App. D.C. 253 (D.C. Cir. 1912)).

The one case that plaintiff cites for this proposition, Oppenheimer, simply noted that "[a court of equity] will . . . give its aid to prevent oppressive or interminable litigation, or a multiplicity of suits, or where the injury is of such nature that it cannot be adequately compensated by damages at law . . . ." Oppenheimer v. Philadelphia, Baltimore, & Washington R.R. Co., 39 App. D.C. at 265 (quoting Parker v. Winnipiseogee Lake Cotton and Woolen Co., 67 U.S. (2 Black) 545, 551 (1862)) (alteration in original). Plaintiff has not cited any case holding that a movant established irreparable harm for purposes of a temporary restraining order

---

[2] Plaintiff asserts that, because the District of Columbia's choice of law rules "provide that the law governing perfection and priority of security interests is the law where Phoenix is registered," Delaware's Uniform Commercial Code applies to this case. See Mot. at 1 n.1.

or preliminary injunction simply by showing that it would be required to pursue a multiplicity of suits to gain relief.³

The problem with plaintiff's argument is that plaintiff again provides no more than "[b]are allegations of what is likely to occur." Wisconsin Gas Co. v. FERC, 758 F.2d at 674. As discussed "[t]he movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." Id. Here, plaintiff has simply asserted a "*likelihood* of protracted or multiple lawsuits" sometime in the future, see Mot. at 7 (emphasis added), without any discussion of how many accounts may have been wrongfully diverted or how many parties may be subject to liability. These bare allegations, without more, do not establish an injury that is "certain, great, actual, and imminent," for which legal remedies are inadequate. See Coalition for Common Sense in Gov't Procurement v. United States, 576 F. Supp. 2d at 168.

The Court therefore concludes that plaintiff has failed to show any irreparable harm. The economic harm that plaintiff alleges — indebtedness in the amount of $908,009.64 — can be recovered "when and if [plaintiff] establishes that there was a valid contract . . . between the parties and it was breached by the defendant[s]." Isong v. Apex Petroleum Corp., 273 F. Supp. 2d at 2. Because "[a] . . . failure to show *any* irreparable harm" constitutes grounds for denying plaintiff's motion, "even if the other three factors entering the calculus merit such relief," Chaplaincy of Full Gospel Churches v. England, 454 F.3d at 297 (citing Sea Containers

---

³ On its own review of the case law, the Court has found some limited support for this proposition. See Lynch Corp. v. Omaha Nat'l bank, 666 F.2d 1208, 1212 (8th Cir. 1981); Ashland Oil, Inc. v. Gleave, 540 F. Supp. 81, 86 (W.D.N.Y. 1982).

Ltd. v. Stena AB, 890 F.2d at 1210-11) (emphasis added), the Court finds that plaintiff is not entitled to injunctive relief.

## C. *The Merits*

Absent any showing of irreparable harm, the Court need not address the remaining factors. See Chaplaincy of Full Gospel Churches v. England, 454 F.3d at 297. The Court, however, briefly discusses one issue regarding the merits. Plaintiff contends that it "is not only likely to but will most definitely succeed on the merits . . . ." Mot. at 9. Plaintiff's argument on this point is essentially that defendants have clearly breached their contractual obligations, whereas plaintiff has honored all of its obligations. See id. The first element of a breach of contract claim, however, is "a valid contract between the parties." See, e.g., Edmond v. Am. Educ. Servs., Civil Action No. 10-0578, 2010 WL 4269129, at *2 (D.D.C. Oct. 28, 2010). Apart from the affidavit in support of plaintiff's motion, the Court has found nothing in the record actually linking plaintiff to the two contracts at issue in this case.

The Agreement is between Phoenix and MCC. See Agreement at 1. The Guaranty is between Ms. Wright and MCC. See Guaranty at 1. Plaintiff states that, by assignment — first, from MCC to Midstates; then, from Midstates to plaintiff — "all contractual provisions at issue in this matter pertain to [it]." Small Aff. ¶ 7. Neither of the two assignment documents, however, are in the record. Plaintiff further states that "*Sterling* [*i.e.*, plaintiff] received a letter dated November 8, 2010 from [Ms.] Wright, on behalf of Phoenix, in which [Ms.] Wright represented that any outstanding debts to *Sterling* would be paid in full." Small Aff. ¶ 27 (emphasis added). But this letter is neither addressed to plaintiff nor does it mention

plaintiff — like the Agreement and the Guaranty, it is addressed to MCC. See Letter from Ms. Wright to MCC, Nov. 8, 2010. Thus, even if plaintiff had established irreparable harm, plaintiff would not be entitled to injunctive relief on the record now before the Court. Although the Court has no basis at this stage in the litigation to doubt the veracity of plaintiff's statements regarding the assignments, it is plaintiff's burden to establish "by a clear showing" that it is entitled to injunctive relief. See Chaplaincy of Full Gospel Churches v. England, 454 F.3d at 297 (internal quotations and citation omitted). Without showing that it is in fact a party to the contracts at issue, plaintiff cannot come close to establishing that there is a substantial likelihood that it will succeed on the merits of its claims.

## IV.  CONCLUSION

For the foregoing reasons, plaintiff's motion for a temporary restraining order and preliminary injunction [Dkt. Nos. 3 and 4] will be DENIED. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
DATE:  January 28, 2011          United States District Judge